HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DERRICK JOHNSON, et al.,

        Plaintiff,

v.

U.S. BANCORP, et al.,

        Defendants.

CASE NO. C11-02010 RAJ

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

**INTRODUCTION**

This matter comes before the court on defendants U.S. Bancorp, U.S. Bank National Association d.b.a. U.S. Bank, John Doe 1, John Doe 2, Jane Doe 1, and Jane Doe 2's ("Defendants" or "U.S. Bank") Fed. R. Civ. P. 12(b)(6) motion to dismiss plaintiffs' amended complaint, or, in the alternative, motion to strike. Dkt. # 42. Plaintiffs Derrick and Amy Johnson ("Plaintiffs" or "Mr. Johnson" and "Mrs. Johnson") filed their Amended Complaint ("AC") on June 19, 2012.[1] Dkt. # 40. In the AC,

---

[1] Defendants note that the AC filed on June 19, 2012, differs from the proposed amended complaint that Plaintiffs filed on April 21, 2012. Dkt. ## 42 at 12 n.6; 35-1 (Proposed AC). They ask that this court strike the "unapproved allegations . . . contained in Paragraph 4." Dkt. # 42 at 12 n.6 (citing Fed. R. Civ. P. 15(a)(2)). The court made no specific findings with regard to "approved" or "unapproved" allegations. Dkt. # 39. Since Defendants have not identified

Plaintiffs allege the following claims against U.S. Bank: (1) civil conspiracy; (2) intentional interference with business expectancy; (3) defamation; (4) unlawful retaliation and "blacklisting" in violation of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A;[2] (5) negligent supervision and training; and (6) loss of consortium. Dkt. # 40 ¶¶ 5.1-5.6. Defendants move to dismiss all causes of action or, in the alternative, strike the "background facts" alleged in paragraphs 3.1-3.17 of the AC. Plaintiffs oppose the motion.[3] Dkt. # 45.

Having reviewed the memoranda, the AC, the request for judicial notice and documents attached thereto,[4] and the record herein, the court GRANTS in part and DENIES in part Defendants' motion to dismiss, with leave to amend certain claims.[5]

---

which specific allegations they find objectionable of the 21 subparts over five pages, the court denies Defendants' request to strike portions of this section.

[2] Plaintiffs also allege retaliation "in violation of . . . other laws prohibiting retaliation." Dkt. # 40 ¶ 5.4. Because Plaintiffs have not specified which other laws they are alleging Defendants violated, the court will consider the retaliation claim only in the SOX context.

[3] In addition to the facts and argument set forth in their response to Defendants' motion, Plaintiffs seek to "adopt those facts and argument set out in their response to Defendants [sic] Motion to Dismiss contained in the Court record at Dkt # 29." Dkt. # 45 at 8. Plaintiffs have failed to double space their brief as required by the Local Rules, have engaged in creative formatting to keep their response to less than 24 pages, and have not filed a motion to file an over-length brief. *See* LCR 7(e)(3), 10(e)(1). The court therefore declines to consider the additional 24 pages of the previously filed brief. *See* Dkt. # 29. The court expects the parties to review and abide by the Local Civil Rules, which were revised December 1, 2012. The court warns that future violations of the Local Rules may result in sanctions. *See* LCR 11(c).

[4] The court generally may not consider material beyond the pleadings in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, where documents are referenced extensively in the complaint, form the basis of plaintiffs' claim, or are subject to judicial notice, the court may consider those documents in the context of a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003). A court may take judicial notice of public records, though "[t]o the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice." *Del Puerto Water Dist. v. U.S. Bureau of Reclamation, et al.*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003). Findings of fact in other cases are also not properly subject to judicial notice. *Malone v. Clark Nuber, P.S.*, Case No. C07-2046-RSL, 2008 WL 2545069, at *4 (W.D. Wash. June 23, 2008) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003)). The court takes judicial notice of the existence and authenticity of exhibits A through J to Defendants' Request for Judicial Notice (RJN). Dkt. # 43. The court does not take judicial notice of the factual findings or disputed contents

# BACKGROUND

In August 2007, U.S. Bank fired Mr. Johnson. Dkt. # 40 (AC) ¶ 3.3. He subsequently filed a claim with the Occupational Health and Safety Administration ("OSHA") of the United States Department of Labor ("DOL"). *Id.* In his OSHA complaint, Mr. Johnson alleged that his termination from U.S. Bank was unlawful under the whistleblower provisions of SOX, 18 U.S.C. § 1514A ("administrative case"). Dkt. ## 40 ¶ 3.3; 43-1 (Ex. A to RJN).

In April 2008, Mr. Johnson began employment with KeyBank. Dkt. # 40 ¶ 4.2.

On May 7, 2010, OSHA notified U.S. Bank that it intended to enter findings favorable to Mr. Johnson in the administrative case. Dkt. # 40-2 (Ex. B to AC).[6]

On May 13, 2010, Mr. Johnson and Mrs. Johnson filed a lawsuit against U.S. Bank that was ultimately removed to federal district court ("*Johnson I*"). Dkt. # 40 ¶ 3.3. On July 15, 2011, Judge Martinez granted U.S. Bank's motion to dismiss. *Johnson et al. v. U.S. Bancorp et al.*, No. C10-960-RSM, Dkt. # 126. The Ninth Circuit Court of Appeals affirmed the dismissal with prejudice on August 21, 2012. *Johnson et al. v. U.S. Bancorp et al.*, 476 Fed. Appx. 148 (9th Cir. 2012).

In May 2010, Mr. Johnson was called into a meeting with several KeyBank employees. Dkt. # 40 ¶ 4.3. At that meeting, the employees confronted Mr. Johnson regarding an anonymous complaint that had been lodged against him. *Id.* According to Mr. Johnson, "[t]he KeyBank employees indicated that they had information that Plaintiff

---

contained therein. *See* FRE 201(b); *Wyatt*, 315 F.3d at 1114; *Del Puerto Water Dist.*, 271 F. Supp. 2d at 1234.

[5] This matter may be decided on the papers. Accordingly, Plaintiffs' request for oral argument is DENIED.

[6] Defendants appealed OSHA's ruling, and a hearing was held before a DOL administrative law judge ("ALJ") on April 30 through May 12, 2012. On October 29, 2012, the ALJ issued a decision and order in favor of Mr. Johnson. *In re: Derrick Johnson v. U.S. Bankorp[sic] et al.*, Case No. 2010-SOX-00037, *available at* http://www.oalj.dol.gov/. Pursuant to FRE 201, the court takes judicial notice of this order, though not of the findings of fact contained therein. *See* FRE 201(b); *Wyatt*, 315 F.3d at 1114.

Johnson was targeting elderly bank customers . . . . During the questioning, KeyBank employees asked Plaintiff Johnson about a previous customer of US Bank named 'Robert,' alleging that the 'anonymous complainant' indicated that Plaintiff Johnson had unlawfully taken money from and abused his relationship with this client." *Id.* KeyBank would not disclose who had made the allegations. *Id.* ¶ 4.4. Mr. Johnson asserts that these allegations were false, but that he was nevertheless "repeatedly targeted, harassed and retaliated against by KeyBank personnel" over the next few months. *Id.* ¶¶ 4.4-4.5.

On September 27, 2010, during a deposition in the administrative case, U.S. Bank's attorneys presented Mr. Johnson with an unsigned document dated January 2, 2008. *Id.* ¶ 4.6. The document contained allegations regarding Mr. Johnson's mistreatment of an elderly U.S. Bank client named "Robert"—the same allegations that KeyBank employees confronted Mr. Johnson with four months earlier. *Id.*

Mr. Johnson believed that the writing in the document was similar to that of his ex-wife, Rachael[7] Johnson. *Id.* ¶ 4.7. Mr. Johnson confronted Rachael Johnson, who admitted that she had written a similar (though not identical) document in January 2008 and had sent it to Chris Heman, a U.S. Bank employee. *Id.* ¶ 4.8.

Mr. Johnson asserts that, due to the stress caused by the foregoing events, he was forced to take disability leave from KeyBank. *Id.* ¶ 4.15. He ultimately resigned in October 2010. *Id.* Mrs. Johnson asserts that she suffered from loss of companionship, love, and affection from Mr. Johnson during this time period. *Id.* ¶¶ 4.16, 5.6.

## ANALYSIS

**A. Legal Standard**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations

---

[7] Rachael Johnson's name is alternately spelled as "Rachael" and "Rachel" throughout the pleadings. Because the signature line of Ms. Johnson's declaration uses the former spelling, the court does as well. Dkt. # 43-8 (Ex. H to RJN) at 3.

as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998). However, the complaint must indicate more than mere speculation of a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.   SOX Retaliation Claim** (fourth cause of action)

SOX provides "whistleblower protection" for persons currently or formerly employed by certain companies regulated by the Securities and Exchange Commission. 18 U.S.C. § 1514A(a)(1); 29 C.F.R. § 1980.101(g); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009). Under the provisions of SOX, a company may not retaliate against an employee who reports or provides investigators with information regarding company conduct that the employee believes to be fraudulent or unlawful. 18 U.S.C. § 1514A(a), (a)(1). To initiate a SOX claim, a claimant must first file his complaint with the Secretary of Labor. *Id.* § 1514A(b)(1)(A). If the Secretary does not issue a final decision within 180 days of the filing date, the complainant may bring an action in United States District Court. *Id.* § 1514A(b)(1)(B).

A complainant alleging unlawful retaliation under SOX must make a prima facie showing that: "(i) [t]he employee engaged in a protected activity; (ii) [t]he respondent knew or suspected that the employee engaged in the protected activity; (iii) [t]he employee suffered an adverse action; and (iv) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2); *see also Van Asdale*, 577 F.3d at 996.

Plaintiffs assert that the protected activity in which Mr. Johnson engaged was the filing of his OSHA claim, and subsequent participation in the ensuing litigation. Dkt. # 40 ¶ 5.4. They assert that U.S. Bank knew of this activity, as evidenced in the May 2010 letter regarding OSHA's intent to enter findings favorable to Mr. Johnson. Dkt. ## 40 ¶ 3.16; 40-2. Plaintiffs assert that Mr. Johnson suffered an adverse action in that he was targeted and harassed, leading to his resignation from KeyBank. Dkt. # 40 ¶¶ 4.5, 4.15-4.16. Plaintiffs assert that the causal connection between this action and Mr. Johnson's participation in the administrative case can be plausibly inferred from the facts that: (1) KeyBank confronted Mr. Johnson with negative information about his employment at U.S. Bank just after OSHA notified U.S. Bank that it was going to issue findings in Mr. Johnson's favor, and (2) the information KeyBank confronted Mr. Johnson with was nearly identical to information included in a document in U.S. Bank's possession. *See id.* ¶¶ 4.1, 4.3, 4.6.

Defendants argue that "[m]issing" from the AC "are basic allegations detailing the substance of the purported communications, the individuals involved, whether those individuals knew of Mr. Johnson's DOL SOX complaint, or when the communications occurred."[8] Dkt. # 42 at 18. However, such detail is not required at this stage of the

---

[8] Defendants further argue that the court should dismiss the retaliation claim because "[i]n a sworn statement, Mr. Johnson acknowledges the *possibility* that KeyBank learned about the elderly customer issue from a source other than U.S. Bank." Dkt. # 42 at 19 (emphasis added). In so arguing, Defendants have underscored the reason that this claim survives—Mr. Johnson's acknowledgment of this "possibility" does not preclude the possibility that U.S. Bank

proceedings. "Rule 8(a) . . . 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).[9]

Plaintiffs' allegations sufficiently plead the retaliation claim.

**C.   Conspiracy Claim** (first cause of action)

To assert a civil conspiracy claim, a complainant must allege that "(1) two or more people combined to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *See Amaker v. King County*, 479 F. Supp. 2d 1151, 1158 (W.D. Wash. 2007).

Defendants argue that Plaintiffs "plead no facts suggesting any kind of agreement between the banks." Dkt. # 42 at 20. Plaintiffs counter that "a tacit understanding is sufficient," and "[c]onspiracies need not be established by direct and positive evidence." Dkt. # 45 at 14 (citing *Alaska S.S. Co. v. Int'l Longshoremen's Ass'n of Puget Sound et al.*, 236 F. 964, 969 (1916) and *Sears v. Int'l Brotherhood of Teamsters et al.*, 8 Wn.2d 447, 452 (1941)) (internal quotations omitted). Yet Plaintiffs have insufficiently pleaded even a "tacit understanding." Plaintiffs have asserted no facts from which the court may infer that there was any reciprocal communication between U.S. Bank and KeyBank,

---

was the source. The ultimate determination is for the fact finder at the proper stage of the proceedings.

[9] Defendants argue that "it is insufficient that Plaintiffs might hope to 'later establish some set of [undisclosed] facts to support recovery.'" Dkt. # 42 at 19 (quoting *Twombly*, 550 U.S. at 561) (alteration in original). The portion of *Twombly* that Defendants quote is taken from a discussion of *Conley v. Gibson*, 355 U.S. 41 (1957), a case that had long been cited for the proposition that a motion to dismiss should survive unless "no set of facts" could support a plaintiff's claim. *Twombly*, 550 U.S. at 561. In expressly rejecting this standard, the *Twombly* Court opined that "[o]n such a focused and literal reading of *Conley*'s 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 561 (alteration in original). In the instant case, Plaintiffs' claim is not "wholly conclusory."

much less that there was any sort of agreement to target Mr. Johnson. *Cf. Allard v. Bd. of Regents of the Univ. of Wash. et al.*, 25 Wn. App. 243, 247-48 (1980) (upholding dismissal of conspiracy claim on summary judgment where department faculty correspondence discussed disregarding plaintiff's teaching ability in considering his request for tenure, but did not evince an agreement to actually do so).

      Plaintiffs' allegations are insufficient to support their claim for civil conspiracy.

**D.   Intentional Interference with Business Expectancy** (second cause of action)

      A claim for intentional interference with business expectancy must set forth the following elements: (1) the complainant was engaged in a valid contractual relationship or business expectancy; (2) the alleged interferor knew of this relationship; (3) the interferor acted intentionally in inducing a breach or termination of the relationship; (4) the interferor was motivated by an improper purpose or used improper means; and (5) the complainant suffered damages as a result of the interference. *See Leingang v. Pierce Co. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997).

      Defendants argue that Plaintiffs have failed to sufficiently plead the second,[10] third, and fourth elements of an intentional interference claim. Dkt. # 42 at 22. Referencing their objections to the retaliation claim, Defendants maintain that the facts alleged by the Plaintiffs are not sufficiently detailed. *Id.*

      In 2007, Mr. Johnson reported what he believed to be bank and securities fraud taking place at U.S. Bank, including numerous allegations of wrongdoing by Chris Heman. Dkt. # 40 ¶¶ 3.2, 3.5(iv)(a)-(b), 4.9. In November 2007, Mr. Johnson filed a SOX claim with OSHA. *Id.* ¶ 3.3. Plaintiffs allege that in January 2008, Rachael Johnson sent a letter to Mr. Heman accusing Mr. Johnson of mistreating an elderly U.S. Bank customer named Robert. *Id.* ¶¶ 4.6, 4.8. On May 7, 2010, OSHA sent a letter to U.S. Bank indicating that it intended to find in Mr. Johnson's favor. Dkt. ## 40 ¶ 3.16;

---

[10] Plaintiffs concede that they omitted the second element from their claim, but request leave to amend their complaint. Dkt. # 45 at 15, 22.

40-2. Plaintiffs allege that after U.S. Bank received that letter, KeyBank personnel confronted Mr. Johnson about his alleged mistreatment of an elderly U.S. Bank client named Robert. Dkt. # 40 ¶¶ 4.1, 4.3. Plaintiffs allege that during a September 2010 deposition, U.S. Bank revealed that it had in its possession an unsigned document accusing Mr. Johnson of mistreating an elderly U.S. Bank client named Robert. *Id.* ¶ 4.6. Finally, Plaintiffs allege that as a result of these events, Mr. Johnson was forced to resign from KeyBank. *Id.* ¶ 4.15.

These allegations provide sufficient facts from which the court can draw a "reasonable inference[] . . . suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969; *see also Twombly*, 550 U.S. at 570 ("[W]e do not require heighted fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."). Plaintiffs' allegations are sufficient to support their claim for interference, provided they are able to amend the complaint to allege the second element of the claim.

**E. Defamation** (third cause of action)

The elements for a defamation claim are: (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages. *Phillips v. World Publ'g Co.*, 822 F. Supp. 2d 1114, 1118 (W.D. Wash. 2011).

Defendants argue that Plaintiffs have made insufficient, "[g]eneric allegations" that "do[] not meet the federal pleading standards." Dkt. # 42 at 23. They cite *Phillips* and *Anderson v. Kitsap Cnty.*, Case No. C09-5282-KLS, 2010 WL 2233679 (W.D. Wash. June 1, 2010), for support. In *Phillips*, the court found plaintiff's defamation claim insufficient where the plaintiff had filed nearly identical complaints against several news organizations, yet failed to identify which allegedly defamatory statements he attributed to the defendant. 822 F. Supp. 2d at 1118. In *Anderson*, the court found that the plaintiff's defamation claim failed because the allegedly defamatory statement was communicated only to the plaintiff. 2010 WL 2233679, at *6.

1  In the instant case, Plaintiffs have identified statements (the allegations made by
2 KeyBank employees in the May 2010 meeting), and have asserted that those statements
3 were false. Dkt. # 40 ¶¶ 4.3-4.4. Plaintiffs allege that in 2008 Rachael Johnson sent U.S.
4 Bank employee Chris Heman a letter containing nearly identical allegations, and in
5 September 2010 U.S. Bank revealed its possession of a nearly identical document. *Id.*
6 ¶¶ 4.6, 4.8. These contentions provide sufficient support for the inference that
7 Defendants were the source of the statements. *See id.* # 40 ¶ 4.6. Plaintiffs' allegations
8 are sufficient to support their claim for defamation.

9 **F. Negligent Supervision and Training** (fifth cause of action)

10  Plaintiffs concede that they have no facts supporting this claim, but explain that
11 they are raising it "[i]n the event Defendant U.S. Bank claims its employees were acting
12 outside the scope of their employment." Dkt. ## 40 ¶ 5.5; 45 at 17. This is insufficient to
13 survive a motion to dismiss.

14 **G. Loss of Consortium** (sixth cause of action)

15  "Damages for loss of consortium are proper when a spouse suffers loss of love,
16 society, care, services, and assistance due to a tort committed against the impaired
17 spouse." *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 494 (2009).

18  Defendants' sole argument for dismissal of this claim is that all of Plaintiffs'
19 underlying claims are "fatally flawed," and thus there is no basis for a loss of consortium
20 claim. Dkt. # 42 at 26. Having found that several of Plaintiffs' underlying claims
21 survive Defendants' motion to dismiss, the loss of consortium claim survives as well.

22 **H. Defendants' Motion to Strike Paragraphs of Amended Complaint**

23  Because the court has not dismissed this case in its entirety, the court now turns to
24 Defendants' motion to strike paragraphs 3.1 through 3.17 of the AC. Defendants argue
25 that the allegations contained in these paragraphs are "substantively identical" to
26 allegations contained in *Johnson I*, and thus are "barred by the doctrines of *res judicata*
27

and collateral estoppel." *Id.* at 27-28 (italics in original). Alternatively, Defendants argue that these paragraphs should be stricken as immaterial and impertinent pursuant to FRCP 12(f), or time-barred under the SOX statute of limitations. *Id.* at 26, 29.

1. <u>Res Judicata</u>

The doctrine of res judicata operates to prevent parties from re-litigating claims decided in a prior proceeding. The elements are: "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (citations omitted). A dismissal with prejudice constitutes a "final decision on the merits." *Id.* at 956.

To determine whether the same claims are involved, the Ninth Circuit applies a four-part test: (1) whether the claims "arise out of the same transactional nucleus of facts;" (2) "whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;" (3) whether the claims "involve infringement of the same right;" and (4) "whether substantially the same evidence is presented in the two actions." *Johnson v. Boeing Co.*, Case No. C07-1614-MJP, 2008 WL 2063550, at *4 (W.D. Wash. May 13, 2008) (citing *Myopo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005)). This district has noted that "[t]he most important and often dispositive factor is the first, common 'nucleus,' criterion." *Id.* at *4 (citing *Myopo*, 430 F.3d at 988).

The court determines which series of events constitute a "transaction" by applying the Restatement test:

> [w]hat factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at *4-5 (quoting Rest. 2d Judgments § 24(2)).

Defendants argue that "[t]o the extent Plaintiffs' claims depend" on the "background facts" in the AC, "they arise from the same transactional nucleus of facts as the claims in *Johnson I*." Dkt. # 42 at 27.  They further argue that the dismissal with prejudice in *Johnson I* was a final judgment, and that the parties in both cases are identical.  *Id.* at 28.

While the court agrees with Defendants regarding the final judgment and the parties, the court is not persuaded that the claims are the same.  In *Sidhu v. Flecto Co.*, 279 F.3d 896, 898, 900 (9th Cir. 2002), the court found that the plaintiff's claims did not arise from the same "transactional nucleus of facts" where the first lawsuit was based on the plaintiff's layoff from work in 1996, whereas the second lawsuit was based on the Union's refusal to reinstate the plaintiff in 1998.  In *Johnson*, the court found that the cases arose from separate transactions where "the discrimination and retaliation alleged in [the first case] involved conduct occurring up to and including Plaintiff's layoff on August 23, 2002 . . . .  In contrast, the discrimination alleged in [the second case] involve[d] conduct occurring after Plaintiff's recall on April 19, 2005."  2008 WL 2063550, at *6.

In the instant case, Plaintiffs' claims arise from a series of events beginning in May 2010, when OSHA sent its letter to the parties, and KeyBank received an "anonymous complaint" about Mr. Johnson.  *See* Dkt. # 40 ¶¶ 3.16, 4.1, 4.3.  The events underlying *Johnson I* (which took place in 2007, *see* Dkt. # 40 ¶¶ 3.2-3.3) are relevant only in that they provide context for the recent events—the current claims are not borne from the same "nucleus of transactional facts" underlying the prior case.

This factor is dispositive, and thus this court finds that res judicata does not bar the claims in this case.

2. Collateral Estoppel

The doctrine of collateral estoppel prevents a party who has lost an issue in a prior proceeding from attempting to re-litigate the issue in a subsequent proceeding.  *See*

*Montana v. United States*, 440 U.S. 147, 153 (1979). For collateral estoppel to apply, "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the earlier litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the prior action." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (citation omitted). The party asserting collateral estoppel "must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *Id.* at 1321 (citations omitted).

Defendants argue that the court's decision in *Johnson I* prevents Plaintiffs from re-litigating the issues raised in paragraphs 3.1-3.17 of the AC. Dkt. # 42 at 28. However, Defendants fail to identify which issues were a "critical and necessary part of the judgment" in that case, and thus precluded now. *See Clark*, 966 F.2d at 1321 ("It is not enough that the party introduce the decision of the prior court . . . .") (citations and internal quotations omitted). Defendants instead seem to conflate the principles of res judicata (where a final judgment in and of itself prevents re-litigation of future, identical claims) with the principles of collateral estoppel (where a final judgment prevents re-litigation of future, identical issues only if those issues were actually litigated and determined in the prior proceeding). *See id.* at 1320-21.

Because the record from *Johnson I* provided by Defendants does not support the contention that the issues in paragraphs 3.1-3.17 were "actually litigated" and a "critical and necessary part of the judgment" in that case, the court finds that *Johnson I* does not have a preclusive effect on the issues in this case.[11]

3. 12(f)

Federal Rule of Civil Procedure 12(f) allows for a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."

---

[11] No party has addressed whether the decision in the administrative case precludes certain issues from being re-litigated here. The court declines to decide the matter *sua sponte*.

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "'impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 665 (W.D. Wash. 2009) (citations omitted). Motions to strike are generally disfavored, and "should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more parties." *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 969 (N.D. Cal. 2009) (citations omitted). In deciding a motion to strike, "the court 'must view the pleading in a light most favorable to the pleading party.'" *Id.* (quoting *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)).

Defendants argue that the "background facts" should be stricken if they "are not determinative of any claim in this case." Dkt. # 42 at 29. They further argue that allowing the allegations to remain would be prejudicial because it would result in a "significant discovery burden," and "[the same] allegations were already litigated in *Johnson I* and are currently being decided in the DOL proceeding." *Id.* at 30. Plaintiffs concede that the "background facts" are neither determinative of nor necessary to their current claims, but argue that they are "important and relevant to show retaliatory intent, animus and willful conduct." Dkt. # 45 at 22.

Viewing the AC in the light most favorable to Plaintiffs, the court finds that certain "background facts" are potentially probative of Defendants' intent and motive, and thus are neither immaterial nor impertinent. Additionally, Defendants fail to demonstrate how allowing the background facts to remain will result in a "significant discovery burden." Dkt. # 42 at 30. Prior to filing their motion to dismiss this case, Defendants participated in a "twelve-day merits hearing" in the DOL case. Dkt. # 42 at

9.  This suggests that discovery regarding the "background facts" has already taken place.[12]  Accordingly, the court denies Defendants' motion to strike at this time.

### 4. Statute of Limitations

Pursuant to the SOX provisions, an employee must file allegations of wrongdoing within 180 days of the alleged violation.  18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(d).

Defendants argue that the allegations contained in the "background facts" section of the AC "cannot form the basis of Mr. Johnson's second retaliation claim because they fall far beyond the permissible 180 day statutory period."  Dkt. # 42 at 29.  However, as the court stated above, these allegations are not determinative of the current claims; they merely provide context for the sequence of events beginning in May 2010, upon which the current claims are based.  The court therefore finds that they are timely.

## CONCLUSION

For all of the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion as follows:

(1)  Defendants' motion is DENIED with regard to Plaintiffs' claims for retaliation under 18 U.S.C. § 1514A, defamation, and loss of consortium.

(2)  Defendants' motion is GRANTED with regard to Plaintiffs' claims for conspiracy, negligent supervision and training, and interference with business expectancy.

(3)  Defendants' motion to strike the "background facts" contained in paragraphs 3.1-3.17 is DENIED.

(4)  Plaintiffs are GRANTED leave to amend the intentional interference with business expectancy claim.  Plaintiffs have not demonstrated that leave to amend should

---

[12] Defendants also express concern about having to re-litigate the issues here, pointing out that that they "are currently being decided in the DOL proceeding."  Dkt. # 42 at 30.  However, the DOL case has now been decided, and thus it is possible that that decision will in fact preclude re-litigation of certain issues.

1 | be granted at this time with regard to their claims for conspiracy or negligent supervision
2 | and training.  To the extent that Plaintiffs become aware of relevant facts to support these
3 | claims, they may file a motion for leave to amend pursuant to the Federal and Local Civil
4 | Rules and the court will make a determination at that time.  Accordingly, the court
5 | DENIES leave to amend those claims at this time.
6 |     Plaintiffs may file their second amended complaint within thirty (30) days of the
7 | date of this order.

9 |     Dated this 18th day of December, 2012.

*[Signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge